# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

UNITED STATES v. RICKERT, Treasurer of Roberts County, S. D.

(Circuit Court, D. South Dakota, N. D. January 19, 1901.)

LANDS ALLOTTED TO INDIANS—IMPROVEMENTS—TAXATION.

Personal property issued by the United States to Indians who have taken lands in allotment under the laws of the United States and improvements on lands allotted to Indians and held in trust for them by the United States—under 25 Stat. 891, c. 405, § 11, providing that patents shall issue for the lands allotted in the name of the allottees, declaring that the United States will hold the lands for 25 years in trust for the Indian to whom the allotment is made, and at the end thereof convey it to him, and that the allottees shall be entitled to the rights and privileges and be subject to the provisions of Allotment Act Feb. 8, 1887, § 6 (24 Stat. 390, c. 119), declaring that on the completion of the allotment and the patenting of the lands to the allottees they shall have the benefits of, and be subject to the laws of, the state, and be citizens of the United States, with all the rights, privileges, and immunities of such citizens—are subject to taxation under Laws S. D. 1897, c. 28, § 4, declaring that for purpose of taxation personal property shall include all improvements made by persons on lands held by them under the laws of the United States.

Motion for Temporary Injunction.

W. G. Porter, Asst. U. S. Atty.

A. B. Kittredge and W. D. Lane, for defendant.

CARLAND, District Judge. The above action has been brought by the United States for the purpose of having the defendant, Rickert, as county treasurer for the county of Roberts, S. D., restrained from seizing and selling certain property belonging to certain Indians residing in the county of Roberts for taxes assessed against the property of said Indians by the proper authorities of the county of Roberts for the years 1899 and 1900. A motion has been made and argued, based upon the allegations of the bill, asking the court to grant a temporary injunction restraining the defendant from selling said property until the final disposition of this case. The defendant insists that no case has been made by the bill that would warrant this court in issuing a temporary injunction, or granting

any relief whatever. The bill alleges: That this suit is instituted by and under the direction of the attorney general of the United States. That the said defendant, James A. Rickert, is the duly elected, qualified, and acting county treasurer in and for the county of Roberts, in the state of South Dakota. That Charles R. Crawford, Adam Little Thunder, Solomon Two Stars, and Victor Renville are Indians, and members of the Sisseton band of Sioux Indians in the state of South Dakota, and are now, and at all times hereinafter mentioned were, wards of the United States, and under the guardianship and supervision of the United States, and are now, and at all times hereinafter mentioned were, residents of that portion of the Sisseton agency situate and being in the county of Roberts, state of South Dakota. That the said Indians are now holding, and for several years last past have held, allotted lands within the said Roberts county, and within the former Sisseton Indian reservation, which lands, hereinafter described, were allotted to the said Indians under the provisions of the agreement of December 12, 1889, as ratified by the act of March 3, 1891, and more particularly under section 5 of the general allotment act, approved February 8, 1887. That the lands allotted by the United States to the said Indians are now, and at all the times hereinafter mentioned were, held in trust by the United States, and are described as follows: Patent to Charles R. Crawford for lot 3, N. W. ¼, section 5, township 124, range 51; patent to Adam Little Thunder for S. W. ¼ of S. W. ¼, section 18, township 125, range 51; patent to Solomon Two Stars for N. E. ¼ of N. W. ¼, section 9, township 124, range 51; patent to Victor Renville for S. W. ¼ of S. W. ¼, section 11, township 124, range 51,—all in Roberts county, S. D. That during the year 1900 the duly-authorized officers of Roberts county, S. D., listed certain improvements on the allotted lands of the said Charles R. Crawford, and returned the assessment upon the improvements on said allotted land at the sum of $630, which said improvements consisted of a large frame house and barn attached to and a permanent improvement upon the said allotted lands, and other improvements of a permanent character attached to the said allotted lands. That the amount of taxes extended on the tax roll upon said improvements, for state and county purposes for the year 1900, was the sum of $21.42. That for the said year 1900 the officers of said Roberts county listed and assessed and returned upon the tax rolls of said county the following personal property against said Charles R. Crawford, to wit, three horses at the valuation of $74, one cow at a valuation of $19, and two wagons at a valuation of $36; total valuation of said personal property so assessed, $129, upon which was assessed and levied a tax of $4.90. That said personal property was issued to the said allottee by the United States, plaintiff herein. That during the year 1899 the officers of said Roberts county assessed and returned upon the tax roll as the personal property belonging to said Adam Little Thunder, 4 horses and 6 colts, 1 cow, 1 yearling, and 1 wagon, at an assessed valuation of $242; and that taxes were assessed and levied for state and county purposes upon said valuation in the sum of $9.72. That said personal property was

duly issued to the said allottee by the United States, plaintiff herein. That in the year 1900 the said Adam Little Thunder was assessed by the officers of said Roberts county aforesaid upon the following personal property, namely, 2 ponies, 1 wagon, and improvements on allotted land, at a total valuation of $233, and that taxes were assessed and levied upon said valuation for said year in the sum of $7.60. That said personal property was issue stock and farm implements issued to said allottee by the United States. That the improvements upon the said allotted land consisted of houses and barns, fences, and other fixed permanent improvements attached to the soil, and a part and parcel of said allotted land. That during the year 1899 the officers of Roberts county assessed against Solomon Two Stars the following personal property: Two horses at a valuation of $42, 1 wagon at a valuation of $20, improvements on allotted lands $75, and that said officers assessed and levied for state and county purposes a tax upon said property amounting to the sum of $6.83. That the said horses were issue stock issued by the United States to said Indian, and used by him upon his said allotted land. That the improvements on said land were of a fixed permanent character, and attached to and a part of the soil of said allotted land. That for the year 1900 the officers of said Roberts county assessed against the said Solomon Two Stars three horses at a valuation of $46, 1 wagon at a valuation of $16, agricultural implements at a valuation of $4, and improvements on said allotted land of said Solomon Two Stars at a valuation of $90, and assessed and levied a tax upon said property upon said valuation in the sum of $3.06. That the said personal property was issued to the said allottee by the United States, and was then and there in his possession, and kept and used by him upon his said allotment. That the improvements upon said allotted land were of a fixed, permanent character, and attached to the soil, and a part and parcel of the said allotted land. That for the year 1899 the proper officers of said Roberts county assessed against the said Victor Renville, and returned upon the assessment roll of said Roberts county, the following property: Two horses, valuation $42; two cows, valuation $39; three hogs, valuation $8; two wagons, valuation $33; agricultural implements, valuation $19; improvements upon the allotted land of said Victor Renville aforesaid described, at a valuation of $75; and assessed and levied upon said valuation a tax for state and county purposes in the sum of $6.64. That for the year 1900 the proper and duly-authorized officers of Roberts county aforesaid assessed against the said Victor Renville the following property: Two horses, valuation $62; one cow, valuation $24; two hogs, valuation $6; two wagons, valuation $22; agricultural implements, valuation $36; and improvements on allotted land aforesaid, $450. That said officers assessed a tax upon said valuation for state and county purposes in the sum of $24.48. That said personal property was then and there property issued to the said allottee by the United States herein, and was used by said Indian upon his said allotment. That the improvements upon the said allotted land were of a fixed, permanent character, and attached to the soil, and were a part and parcel thereof.

That the defendant, as county treasurer and collector of taxes for the county of Roberts in this state, is about to seize and advertise for sale the property of these several Indians for the taxes so levied and assessed against their property for the years mentioned. That the taxes so assessed are a cloud upon the title of the lands of the United States hereinbefore described. The bill prays for a permanent injunction restraining the collection of these taxes, and for a temporary injunction pending the suit.

No objection is made that the bill is multifarious in seeking to enjoin the collection of taxes against different individuals, and that point will not be noticed by the court, whatever force there may be in it. In order to determine the status of these Indians with reference to the state of South Dakota and the United States, it will be necessary to examine the legislation of congress in regard to Indians who have taken lands in allotment.

Section 11, c. 405, p. 891, 25 Stat., provides as follows:

"That upon the approval of the allotments provided for in this act by the secretary of the interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the lands thus allotted for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs, as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever, and patents shall issue accordingly. And each and every allottee under this act shall be entitled to all the rights and privileges and be subject to all the provisions of section six of the act approved February eight, 1887, entitled 'An act to provide for the allotment of lands in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and of the territories over the Indians and for other purposes.' Provided, that the president of the United States may in any case, in his discretion, extend the period by a term not exceeding ten years; and if any lease or conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such lease or conveyance or contract shall be absolutely null and void."

Section 6, c. 119, p. 390, 24 Stat., referred to in the foregoing section, is as follows:

"That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside; and no territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law. And every Indian born within the territorial limits of the United States to whom allotments shall have been made under the provisions of this act, or under any law or treaty, and every Indian born within the territorial limits of the United States who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States without in any manner impairing or otherwise affecting the right of any such Indian to tribal or other property."

The second subdivision of article 22 of the constitution of the state of South Dakota contains the compact entered into between the United States and the state of South Dakota on the admission of the latter into the Union, and reads as follows:

"That we, the people inhabiting the state of South Dakota, do agree and declare that we forever disclaim all right and title to the unappropriated public lands lying within the boundary of South Dakota, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States; and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States; that the lands belonging to citizens of the United States residing without the said state shall never be taxed at a higher rate than the lands belonging to the residents of this state; that no taxes shall be imposed by the state of South Dakota on lands or property therein belonging to or which may hereafter be purchased by the United States, or reserved for its use. But nothing herein shall preclude the state of South Dakota from taxing as other lands are taxed any lands owned or held by any Indian who has severed his tribal relation and has obtained from the United States, or from any person, a title thereto by patent or other grant, save and except such lands as have been granted to any Indian or Indians under any act of congress containing a provision exempting the lands thus granted from taxation. All such lands which may have been exempted by any grant or law of the United States shall remain exempt to the extent and as prescribed by such act of congress."

It appears from the legislation of congress that the Indians mentioned in the bill of complaint are citizens of the United States and of the state of South Dakota, and are entitled to the benefits of and are subject to the laws, both civil and criminal, of the state of South Dakota. By section 1, art. 7, of the constitution of the state of South Dakota they are qualified electors of the state of South Dakota. They have all the rights and privileges of any citizen of the United States residing within this state. They have a voice in the making of the laws of the state. They are shielded and protected in their persons and property by the laws of the state. They have a voice equal to any other citizen in the imposition of any tax upon their property. They have the same voice as any other citizen in making the laws of the state of South Dakota which determine what property shall be taxed, and how it shall be classified for taxation. The inquiry now arises, are these Indians, after having been clothed with all these rights and privileges, entirely relieved from assuming and bearing their share of the burden which every citizen bears in return for those privileges and rights which appertain to citizenship? The state of South Dakota has the right to tax all property within her jurisdiction, without she has chosen to exempt the same from taxation, or unless some paramount law of the United States prohibits the state from taxing the same. The state of South Dakota has the undoubted authority to classify property for the purposes of taxation. She has the right to say that property which might technically be called real property by virtue of the provisions of the common or statute law shall, for the purposes of taxation, be called personal property. See Johnson v. Roberts, 102 Ill. 655. By section 4 of chapter 28 of the Laws of South Dakota for the year 1897 it is provided:

"Personal property shall, for the purpose of taxation, be construed to include * * * .all improvements made by persons upon lands held by them under the laws of the United States."

Under the law last quoted the improvements made upon these allotted lands, for the purposes of taxation, are to be deemed personal property, and they were so assessed by the officers of the county of Roberts. There is no pretense in the case made by the bill that the county of Roberts has attempted in any way to tax the allotted land itself; and whether the land itself is taxable is not a question presented in this case. These Indians having severed their tribal relations, and adopted the ways of civilized life, and having become full citizens of the United States, and owners of property in the state of South Dakota, in what different position are they in regard to the revenue laws of the state than any other citizen residing therein? I cannot see that they occupy any different position than any other citizen, so far as property owned by them is concerned; and it is not claimed in this suit that the property taxed does not belong to the Indians named. If these Indians, in regard to the property described in the bill, are not subject to taxation now, when, if at all, will they ever be liable to taxation? What can happen in the future that will render them any more liable to taxation than they are now? If it is the object and purpose of the United States to create out of these formerly untutored savages law-abiding citizens of the United States, and in the carrying out of such purpose it has conferred upon them the boon of citizenship, can it in any way hinder the development of such purpose to compel these new citizens to share a part of the burden that every other citizen takes upon himself when he acquires citizenship? All the property described in the bill of complaint being, under the laws of the state of South Dakota, personal property for the purposes of taxation, it results, that the bill states no case warranting any equitable relief either on technical grounds or upon the merits. The technical grounds which would bar any relief to the United States are: First, it does not appear by the bill that the United States has any interest in the property sought to be taxed; second, the property sought to be taxed being personal property, there is an adequate remedy at law for any interference with the same on the part of the taxing officers of Roberts county. Upon the merits it appears from the bill that the property described therein was rightfully taxed by the officers of the county of Roberts. The Indians mentioned in the bill occupy about the same relation with reference to the United States and the state of South Dakota as do settlers upon the public lands of the United States, who have entered and paid for their land, and done everything that is required to be done by the laws of the United States to give them title to the land upon which they reside; the naked legal title, simply, remaining in the United States. Other citizens of South Dakota are obliged to pay taxes upon improvements made upon lands of this character, and I can see nothing in any law or policy of the United States or the state that would exempt these citizens mentioned in the bill of complaint from the same burden. Motion for temporary injunction denied.