## LYSOL, Inc., v. MONTGOMERY.

District Court, W. D. Louisiana, Opelousas Division. September 27, 1927.

No. 305.

Trade-marks and trade-names and unfair competition ⌐61—Retailer cannot use manufacturer's trade-name in sale of changed or adulterated product.

A retail dealer in an article sold by the manufacturer under a trade-name may sell in smaller containers than those in which it is purchased, but may not use the trade-name on them, where the contents are different in composition or adulterated.

In Equity. Suit by Lysol, Incorporated, against W. A. Montgomery. On motion for preliminary injunction. Granted.

Dubuisson, Perrault & Burleigh, of Opelousas, La., for complainant.

Mouton & Debaillon, of Lafayette, La., for respondent.

DAWKINS, District Judge. This matter has been submitted upon application for a preliminary injunction to restrain the selling or distribution by respondent of what complainant contends is a spurious or adulterated article, under its trade-name of "Lysol." Affidavits have been submitted by both sides, from which, for the purposes of this application, I find the facts to be as follows:

Complainant has, for a long period of years, manufactured and sold to distributors a liquid disinfectant, under its duly registered trade-name of Lysol. Respondent is in the drug business in the town of Lafayette, La., and has retailed the said disinfectant. At some time in the recent past the latter began to pour the liquid from the containers in which it had been put up by complainant into smaller bottles, upon which he placed the typewritten label: "Lysol—Poison. The Owl Drug Store, Lafayette, Louisiana, W. A. Montgomery, R. Ph." This he claims was done because his customers called for smaller quantities than were contained in the bottles used by complainant, and he was thereby able to meet the demands of his trade for less quantities at smaller prices.

Several samples of this kind—that is, those put up in bottles and bearing the label just quoted—were purchased by agents of the complainant and sent to chemists in Chicago and New Jersey, the latter being connected with the complainant's business, and were found to contain different proportions of the ingredients used in the genuine article, and, instead of potash as an alkali, soda had been substituted. No analysis of what he was selling in this way has been made or offered by respondent, so that I think I am reasonably justified in finding that those analyses furnished by complainant are correct. In doing so, I am bound to conclude that the preparation sold by the respondent is not genuine Lysol.

The law seems to permit a retailer of a commodity sold under a trade-name to sell it in less quantities and in other containers as the genuine article, so long as he makes it clear to the public that the bottling or packing is done by himself, and no change or adulteration of its composition is resorted to. Prestonettes v. De Spotturno Coty, 264 U. S. 359, 44 S. Ct. 350, 68 L. Ed. 731; 38 Cyc. p. 752. However, he cannot so use the name of a trade-mark owner for the distribution of a product which is different in composition or has been adulterated.

My conclusion is that complainant is entitled to a preliminary injunction restraining respondent from selling or distributing under the name of "Lysol" anything other than the genuine article as manufactured by complainant. Decree may be presented.