BAYER CO., Inc., v. SHOYER et al.
No. 8743.

District Court, E. D. Pennsylvania.
Feb. 28, 1939.

C. Russell Phillips and Montgomery & McCracken, all of Philadelphia, Pa. (Edward S. Rogers and David Rasch, both of New York City, of counsel), for plaintiff.

Michael Edelman, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

Complainant, in an equity suit involving trade mark infringement and unfair competition, seeks to restrain the defendants from advertising and selling the plaintiff's product—Bayer Aspirin Tablets—under labels alleged to simulate those of the plaintiff, and alleged to bear plaintiff's two trade marks "Bayer" and the "Bayer Cross", the latter a circular symbol upon which the word "Bayer" appears twice in the form of a cross.

After hearing upon a rule to show cause why a preliminary restraining order should not issue, Judge Kirkpatrick, in this District, allowed a preliminary injunction restraining the use of the two trade marks, except for the following qualification:

"Provided, however, that nothing herein shall prevent the defendants from repackaging and reselling genuine tablets of plaintiff's manufacture, purchased by the defendants in the open market, and from stating such fact upon boxes or containers which do not simulate those used by the plaintiff, substantially as follows:

"'Contents are genuine Bayer Aspirin repacked by Shoyer and Newman, not authorized by and not connected with The Bayer Co., Inc.'

"The words 'Bayer Aspirin' to be printed on the same line as the words 'repacked by Shoyer and Newman' and the words 'not connected with' to be printed on the same line as the words 'The Bayer Co., Inc.'; every word in said statement to be in letters of the same size, color, type and general distinctiveness, and the defendants to make no use of the word 'Bayer' except as a part of said statement; neither shall the defendants make use of said word 'Bayer' upon any window strips, display cartons, post cards, circulars, pamphlets or other devices, except as part of the statement above referred to, or of a similar statement adapted to those types of advertisement, which shall be in form, color, type, etc., generally as above specified."

At the trial of this case, defendant offering no evidence, the allegations of the bill of complaint were in general established. There is, indeed, no dispute as to the fundamental facts.

Plaintiff, The Bayer Co., manufactures and sells enormous quantities of aspirin

tablets throughout the United States and spends millions of dollars in extensive advertising. It has registered and owns the trade marks "Bayer" and the "Bayer Cross". The packaging is distinctive in type, displaying a brown and yellow color combination, with the word "Genuine" printed in red, and bearing the trade marks "Bayer" and the "Bayer Cross".

The complaint is that the defendants buy hundred-tablet bottles of aspirin put out by the plaintiff and rebottle the product into small vials containing four tablets each. Upon the vials is a brown and yellow label, which reads as follows:

| | |
|---|---|
| BAYER ASPIRIN | B |
| | A |
| Repacked in Phila. by | BAYER |
| | E |
| Shoyer & Newman | R |

and the center of the label is the Bayer Cross, dividing the two columns of printed matter. The words "Bayer Aspirin" are in the largest type: the words "The Bayer Co., Inc. N. Y." are in the next largest type, then follow in the order named (in point of size) "Shoyer & Newman", "repacked in Phila. by", and "Wholly independent of".

Testimony was introduced by the complainant to show that the plaintiff's and defendants' labels were confusingly similar, and that the buying public is or is likely to be deceived into thinking that it is purchasing the product packed by the plaintiff when it buys the defendants' rebottled product. The witnesses were not retail purchasers, but rather wholesale purchasers and retail sellers.

It is conceded that the defendants' vials contain genuine Bayer Aspirin tablets. There was, however, testimony to the effect that in the process of repackaging foreign matter, such as dirt, hair, and, in one case, a small piece of glass, were present in the defendants' vials.

The complainant's position is this:

(a) The foreign matter contained in defendants' vials make out a case of adulteration under Section 501 of the Federal Food, Drug and Cosmetic Act of 1938, 21 U.S.C.A. § 351; wherefore, under the authority of Lysol, Inc. v. Montgomery, D.C., 23 F.2d 682, the defendant should be enjoined from using any trade mark of the plaintiff upon any product the defendant sells or offers for sale.

(b) Aside from the fact of adulteration, defendants may make no use of the plaintiff's trade marks without the latter's consent. For this proposition, plaintiff relies upon the Federal Trade-Mark Act of February 20, 1905, § 16, 15 U.S.C.A. § 96, and upon cases cited in its brief.

(c) Because of the character of the defendants' label, and the difference in the size of the lettering of various statements thereupon, the buying public is not adequately apprized that the plaintiff is not responsible for the packaging, and buys the defendants' product under the impression that it is one put out by the

Wholly independent of

THE BAYER CO., Inc. N. Y.

Dose: 1 or 2 tablets with water

plaintiff; wherefore, the use of the present label should be enjoined.

The defendants' position is this:

(a) It is willing to desist from using the "Bayer Cross" trade mark.

(b) The defendants' label, in spite of the utilization of large and small lettering, adequately informs the public of the fact of rebottling, and the public is not misled or deceived.

### Discussion

The only question presented for serious consideration is the manner in which and the extent to which defendants may use the trade mark "Bayer" in the labels on the repacked containers of Bayer Aspirin tablets.

It is well settled, since Coty v. Prestonettes, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731, that there is nothing in the law to prevent one from breaking a package containing a trade-marked article and re-selling it either in bulk or divided, and repacked.

It is equally well settled that the repacker or rebottler may use the manufacturer's trade mark upon such repacked containers, Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731; Russia Cement Co. v. Frauenhar, 2 Cir., 133 F. 518; but if he does so, then he must couple that use with a statement to the public which will, with adequate clarity and detail, disclose the fact of the rebottling or repackaging, so that the public may know that the product has passed

through other hands, Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; L. E. Waterman Co. v. Modern Pen Co., D. C., 193 F. 242; Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731; B. B. & R. Knight, Inc. et al. v. W. L. Milner & Co., D.C., 283 F. 816. A trade mark is a valuable property right, and the Trade-Mark Law has two fundamental principles underlying it: one, protection to the owner of the trade mark against injury to the good-will represented by that trade mark, and the other, protection to the public, to the extent that it may not be misled into buying an article which, because of its trade mark, it identifies with a particular manufacturer, when in fact the article is manufactured or repacked by another: Coty v. Prestonettes, Inc., 2 Cir., 285 F. 501, 513.

By a process of evolution, moulded by the exigencies and varied nature of the numerous cases arising under this phase of the law, a more or less specific rule has been formulated, by judicial decisions, with regard to the character and physical aspects of the informative statement to the public that must be displayed upon the label of the repacker or rebottler. The statement must reveal that the product has been repacked, and that there is no connection between the manufacturer and the repacker: in order that the public may have a fair chance to read the entire label, all the words are required to be in letters of the same size, color, type, and general distinctiveness: Semler v. Kirk, 27 F.Supp. 630, U.S.D.C., March Term, 1936, No. 9421.[1] The rule and the requirements of the statement have been applied to advertising media as well as to labels. Some cases go further and require a certain juxtaposition of the trade mark and the name of the repacker, and of other printed matter, as did the preliminary decree in this case: Coty, Inc. v. Parfums De Grand Luxe, Inc. et al., D.C., 292 F. 319, affirmed Id., 2 Cir., 298 F. 865, certiorari refused, Parfums De Grand Luxe, Inc., et al. v. Coty, Inc., 266 U.S. 609, 45 S.Ct. 94, 69 L.Ed. 466.

The rule against misleading the public further operates to restrain a repacker from using packages and labels so similar in general appearance, color, design, &c., to that of the manufacturer or trade mark owner, as to prevent the potential purchaser from distinguishing the two. This similarity may be effected by imitating color design, arrangement of printed matter, the use of drawings, and so on.

Tested by the above criteria, it is evident that the defendants' label falls short of the established standard. It uses the same color scheme as the plaintiff—brown and yellow: it uses the "Bayer Cross" trade mark: far from using words in letters of the same size, type, and general distinctiveness, it displays the words "Bayer Aspirin" in large bold type, while on the other hand, the words "Wholly independent of" are so small as to be almost indistinguishable, and are certainly not likely to be read on casual inspection. The same criticism, though to a lesser degree, is applicable to the words "Repacked in Phila. by." The advertising placards used by the defendants are ojectionable in the same way. The defendants have thus been guilty of unfair competition, and the use of the label and the placards will be enjoined, and any placards and labels employed by the defendants in the future must conform to the rule herein enunciated.

I do not, however, consider the plaintiff's position that the defendants adulterate its product to be supported by the evidence. The definition of adulteration contained in the Federal Food, Drug and Cosmetic Act is not applicable here, since this is not a proceeding under that statute; nor is Lysol, Inc. v. Montgomery, supra, applicable upon this point, since the adulteration adverted to in that case consisted of an actual change in the chemical composition of the product there involved. It is undesirable, of course, that foreign matter should be discovered in bottles of aspirin tablets, but I am not aware that the law has ever gone to the extent of forbidding the use of a trade mark on that ground. Indeed, it is because of the possibility of such inferiority in a repacked article of commerce that the repacker has been compelled to advertise to the public his independence from the manufacturer of the product, so that the latter's good-will and reputation may not suffer. That protection the law affords to the manufacturer, but no more. As Mr. Justice Holmes remarked in Coty v. Prestonettes, supra, if the repacked article is inferior the public will soon find out. Other

---

[1] Reported in Trade Mark Reporter, February, 1938, vol. 28, no. 2, p. 81.

cases relied on by plaintiff on this point are inapplicable.

■ Nor am I in accord with the plaintiff's contention that Section 16 of the Trade-Mark Act, 15 U.S.C.A. § 96, either alone or read in conjunction with Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476, and other cases cited by the plaintiff, operate to forbid defendants' use of the plaintiff's trade mark under any circumstances.

I consider that the section referred to does not apply to cases where a repacker sells the manufacturer's genuine product, but rather to cases where one sells, under the trade mark of another, a product not manufactured or put out by the owner of the trade mark.

■ As was stated in Prestonettes, Inc. v. Coty, supra, 264 U.S. pages 368, 369, 44 S.Ct. page 351, 68 L.Ed. 731:

"Then what new rights does the trademark confer? It does not confer a right to prohibit the use of the word or words. It is not a copyright. The argument drawn from the language of the Trade-Mark Act does not seem to us to need discussion. A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141. There is nothing to the contrary in Bourjois & Co. v. Katzel, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464, 26 A.L.R. 567. There the trade-mark protected indicated that the goods came from the plaintiff in the United States, although not made by it, and therefore could not be put upon other goods of the same make coming from abroad. When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo. Delaware & Hudson Canal Co. v. Clark, 13 Wall. 311, 327, 20 L.Ed. 581.

"If the name of Coty were allowed to be printed in different letters from the rest of the inscription dictated by the District Court a casual purchaser might look no further and might be deceived. But when it in no way stands out from the statements of facts that unquestionably the defendant has a right to communicate in some form, we see no reason why it should not be used collaterally, not to indicate the goods, but to say that the trade-marked product is a constituent in the article now offered as new and changed. * * *"

Nor does Old Dearborn Distributing Co. v. Seagram-Distillers, supra, support the plaintiff's position in this regard. See the opinion in Semler v. Kirk, supra, decided in this District by Judge Maris, now a member of the Circuit Court of the United States for the Third Circuit. Other cases cited by the plaintiff are readily distinguishable from the instant case.

It may be mentioned in passing that Bourjois & Co., Inc., v. Katzel, 2 Cir., 275 F. 539, cited by the defendants, has been reversed by the Supreme Court of the United States (Bourjois & Co., Inc. v. Katzel, 260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464, 26 A.L.R. 567). While Apollinaris Co. v. Scherer, C.C., 27 F. 18, was not mentioned in that decision, it would seem to fall by the ruling of the Supreme Court: see annotation to the case of Bourjois & Co., Inc. v. Katzel in 26 A.L.R., page 570. A careful analysis of all the cases cited by the defendants discloses that they either do not govern the disposition of the question here presented, or are not contrary to the rules here enunciated.

I make the following findings of fact:

1. At the time this action was commenced, and for many years prior thereto, plaintiff, The Bayer Co., Inc., was, and still is, a corporation organized and existing under and by virtue of the laws of the State of New York.

2. At the time this action was commenced, and for some time prior thereto, the defendants, David Shoyer, Harold N. Newman and George Newman, were and still are, citizens of the State of Pennsylvania and residents and inhabitants of the City of Philadelphia, in the Eastern District of Pennsylvania where, as copartners, they were, and still are, doing business under the firm name and style of Shoyer and Newman.

3. This is a suit under the Trade-Mark Laws of the United States, viz, the Act of February 20, 1905, as amended (15 U.S.C.A. §§ 81–109), and is a suit of a civil nature between citizens of different states wherein the amount in controversy, exclusive of interest and costs, exceeds the sum or value of Three Thousand Dollars ($3,000).

4. The Court has jurisdiction of the parties and of the subject matter of this suit.

638

5. For many years plaintiff has been the owner of trade marks consisting of the word Bayer and the word Bayer arranged in the form of a cross, applied by it to Aspirin produced and sold by it generally throughout the United States.

6. Plaintiff's said trade marks have been duly registered under the Act of Congress of February 20, 1905.

7. In addition, plaintiff for many years has used for its goods packages of distinctive brown and yellow color, design and appearance, bearing plaintiff's said trade marks, and the word "Genuine" printed red in a distinctive script type, the same as "Plaintiff's Exhibit A, Plaintiff's Package," filed with the Bill of Complaint.

8. Plaintiff has widely used said trade marks and distinctive package and, at a cost of many millions of dollars, has extensively advertised its product and its said trade marks and package, whereby the same have been brought to the attention of the public throughout the United States.

9. Plaintiff's said trade marks and package are well known to the public and plaintiff's goods are recognized by said trade marks and package.

10. Plaintiff's said trade marks and package designate and identify to the public that the goods in connection with which they are used and the packages in which they are contained come from the plaintiff and are authorized and legitimate packages put out by the plaintiff.

11. Plaintiff in the past five years has sold over 250 million packages of its product.

12. Plaintiff's trade marks and package are of great value to it.

13. Defendants have purchased plaintiff's 100 tablet size package of Aspirin, and without the license or permission of plaintiff, have broken the packages, and have placed four of the tablets in vials to which they have attached a brown and yellow label bearing the name Bayer and the Bayer Cross, the same as "Plaintiff's Exhibit C, Defendants' Vial."

14. Defendants have sold the vials so labeled to dealers who have sold them to the public.

15. Defendants have reproduced the Bayer Cross on their labels in the identical manner in which it is printed on plaintiff's package, using the same type, brown background and circle which are used by the plaintiff.

16. Defendants' labels deceptively imitate plaintiff's distinctive package in color and appearance.

17. Defendants have advertised their product by means of display cards and window strips furnished to dealers, upon which are printed the name Bayer, and Bayer Cross and the word "Genuine" in red script type, the same as "Plaintiff's Exhibit D, Defendants' Display Card," and "Plaintiff's Exhibit E, Defendants' Window Strip," attached to the Bill of Complaint. Said window strips, which are brown and yellow in color, and said display cards also contain an identical reproduction of the face of plaintiff's package.

18. Defendants use letterheads which contain an identical reproduction of the Bayer Cross as used by plaintiff on its packages, and business cards which also contain plaintiff's trade mark Bayer, the same as "Plaintiff's Exhibit F, Defendants' Letterhead," and "Plaintiff's Exhibit G, Defendants' Business Card," attached to the Bill of Complaint.

19. Defendants' use of plaintiff's trade marks and simulation of its package tend to confuse and deceive the public and are calculated to create the impression and to lead the public to believe that the package as thus marketed by the defendant is put out by and comes from the plaintiff.

20. Plaintiff's trade marks are used in interstate commerce and defendants' packages are likewise sold in interstate commerce.

21. The conduct of the defendants has damaged the plaintiff, and plaintiff has no adequate remedy at law.

I make the following conclusions of law:

1. Plaintiff's registered trade marks Bayer and the Bayer Cross are valid and subsisting.

2. The packages used by plaintiff for its product, as shown by "Plaintiff's Exhibit A, Plaintiff's Package," filed with the Bill of Complaint, identifies to the public the product of the plaintiff.

3. Defendants' methods as above found infringe plaintiff's trade marks and constitute unfair competition.

4. Plaintiff is entitled to an injunction restraining the defendants from using the word "Bayer" or the Bayer Cross trade mark or any like word or cross or

any simulation of plaintiff's packages or labels upon or in connection with any product·sold by the defendants whether or not such product be manufactured by the plaintiff, provided, however, that nothing herein contained shall prevent the defendants from repackaging and reselling genuine tablets of plaintiff's manufacture, purchased by the defendants in the open market, and from stating such fact upon boxes or containers which do not simulate those used by the plaintiff, substantially as follows: "Contents are genuine Bayer Aspirin repacked by Shoyer and Newman, not authorized by and not connected with The Bayer Co., Inc."

The words "Bayer Aspirin" to be printed on the same line as the words "repacked by Shoyer and Newman" and the words "not connected with" to be printed on the same line as the words "The Bayer Co., Inc."; every word in said statement to be in letters of the same size, color, type and general distinctiveness, and the defendants to make no use of the word "Bayer" except as part of said statement; neither shall the defendants make use of said word "Bayer" upon any window strips, display cartons, post cards, circulars, pamphlets or other devices, except as part of the statement above referred to, or of a similar statement adapted to those types of advertisement, which shall be in form, color, type, etc., generally as above specified.

The preliminary injunction issued by Judge Kirkpatrick in this case seems to me adequately and fairly to meet the requirements of the situation. A final decree in similar form may be presented.