100 N.J. Super. 19 (1968)
241 A.2d 24
CHANEL INC. AND CHANEL INDUSTRIES, INC., PLAINTIFFS-APPELLANTS,
v.
CASA FLORA COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1967.
Decided March 19, 1968.
*20 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. Seymour Margulies argued the cause for plaintiffs-appellants (Messrs. Levy, Lemken & Margulies, attorneys; Messrs. Netter, Lewy, Dowd, Fox, Ness, & Stream by Mr. Lee Epstein, on the brief).
Mr. Milton M. Unger argued the cause for defendant-respondent (Messrs. Milton M. and Adrian M. Unger, attorneys; Mr. Jack J. Stecher, on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Plaintiffs (hereafter Chanel) sued to enjoin defendant from rebottling and selling plaintiffs' *21 "Chanel No. 5 Eau de Cologne." The trial court entered judgment in favor of defendant (94 N.J. Super. 110 (Ch. Div. 1967)) and Chanel appeals.
Chanel distributes the cologne in sealed bottles of various sizes. It claims that, at least in New Jersey, it sells only to 500 retailers selected by it, and with them it maintains a minimum resale price policy pursuant to N.J.S.A. 56:4-3 et seq. Its fair trade contracts with those retailers provide as follows (emphasis ours):

 "EAU DE COLOGNE
 Retail Price
 Size Each
 379 ....... 16 fl. oz. .............................. 17.50
 378 ....... 8 fl. oz. .............................. 10.00
 377 ....... 4 fl. oz. .............................. 6.00
 376 ....... 2 fl. oz. .............................. 3.50
 If sold by the ounce or smaller
 quantity: 1 ounce or any fraction thereof, 2.00"

Defendant buys large bottles of the genuine cologne from wholesalers in Massachusetts and New York and rebottles it in one dram (1/8 ounce) vials which it packages in what it calls a "purse size flaconette." Defendant sells these only to wholesalers, at 36¢ each. Where these wholesalers are located does not appear. Defendant provides them with display material to be given to the retailers which states the retail price of the flaconette to be $1. However, so far as defendant is concerned, the retailers may sell the flaconette for any price they choose. Chanel did not join as a defendant any price-cutting retailer.
Chanel argues that the cologne in defendant's flaconette is not truly Chanel No. 5. Judge Herbert held that that had not been proved. We see no reason to overturn this conclusion, State v. Johnson, 42 N.J. 146 (1964), and therefore we deal with the remaining questions involved in this appeal upon the assumption that defendant's vials do contain genuine Chanel No. 5.
*22 Chanel asserts that defendant's operations violate the bottle law, N.J.S.A. 56:3-14 et seq., the New Jersey trade mark law, N.J.S.A. 56:3-1 et seq., and Chanel's legally fixed minimum price schedule and constitute unfair competition. We agree with Judge Herbert's rejection of these contentions, and will add but little to the reasons stated by him.
Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924) held that it was not a violation of the federal trade-mark act to rebottle and repackage Coty perfume and sell it as such, provided the label informed the purchaser of the facts. As Judge Herbert pointed out, although Prestonettes has been severely criticized it has never been overruled, and even Chanel admits that, at least with reference to federal trademark law, Prestonettes represents the prevailing law. And in Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947) the Supreme Court not only adhered to Prestonettes but held that selling reconditioned Champion spark plugs by that name but with full disclosure was not unfair competition. See also Restatement, Torts, § 737(b) (1938); cf. Coca-Cola Co. v. Bennett, 238 Fed. 513 (8th Cir. 1916).
However, Chanel says that its trade-mark is also registered under N.J.S.A. 56:3-1 et seq., and urges that, since in construing our own trade mark act we are not bound to follow Prestonettes and Champion, we should hold that our statute forbids conduct such as Prestonettes and Champion permitted.
Chanel states that New York has so construed its statute, Lanvin Parfums, Inc. v. Le Dans, Ltd., 9 N.Y.2d 516, 174 N.E.2d 920 (Ct. App. 1961), certiorari denied 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 35 (1961). But the New York statute expressly provides, which ours does not, that a person is guilty of a misdemeanor who
"Knowingly sells, offers or exposes for sale, any goods which are represented in any manner, by word or deed, to be the manufacture, packing, bottling, boxing or product of any person, firm or corporation, *23 other than himself, unless such goods are contained in the original package, box or bottle and under the labels, marks or names placed thereon by the manufacturer who is entitled to use such marks, names, brands or trade-marks; * * *." (Emphasis added.)
This statute, now § 279-n of the General Business Law of New York, McKinney's Consol. Laws, c. 20, was part of the Penal Law of New York when Lanvin, supra, was decided. Chanel argues that N.J.S.A. 56:3-8 is the equivalent of the above quoted section of the New York law. We disagree.
Chanel cites no case and we find none which has construed a statute such as ours as the New York statute was construed in Lanvin. On the contrary, all the cases we have found which arose out of statutes similar to ours have adhered to the rules of Prestonettes and Champion. They have held that where there is full disclosure of the facts there is no trade-mark infringement or unfair competition. In fact, until the Court of Appeals reversed the Appellate Division in Lanvin, the New York statute was so construed, even though the statute had been on the books since 1889 and had covered bottlers since 1908.
In Lanvin the Appellate Division had followed Prestonettes and found in favor of defendant rebottler of Lanvin's Arpege perfume. Justice (now Judge) Breitel, speaking for the majority of the Appellate Division, 12 A.D.2d 104, 208 N.Y.S.2d 675, 678 (App. Div. First Dept. 1960), said:
"Although subdivision 6 of section 2354, then as Penal Code, section 364, was added in its original form in 1889 (L. 1889 ch. 45), and as far back as 1908 (L. 1908 ch. 427) it was amended to cover bottlers, boxers, and packers, rarely, if ever, has it been suggested by a court that its design was to prevent rebottling with truthful labels, including a trade name. On the contrary, it has been uniformly held that the statute is a fraud statute and that in the absence of fraud or deception it would lack constitutional validity."
He pointed out that Prestonettes arose in New York and the New York statute had been cited to the United States Supreme Court.
*24 In Guerlain, Inc. v. F.W. Woolworth Co., 297 N.Y. 11, 74 N.E.2d 217 (Ct. App. 1947), certiorari denied 332 U.S. 837, 68 S.Ct. 220, 92 L.Ed. 410 (1947) Judge Fuld, speaking for the Court of Appeals, held that the sale by F.W. Woolworth Co. of Guerlain perfume in ampules smaller than defendant's flaconettes at ten cents each violated New York's Feld-Crawford Fair Trade Act because Guerlain had validly fixed a minimum price of $1.60 for one dram or less of its perfume. Nevertheless Judge Fuld, joined by Chief Judge Desmond, dissented in Lanvin (174 N.E.2d, at 923) and voted to affirm upon Judge Breitel's opinion.
In "The Problem of Trademark Dilution and the Antidilution Statutes," 44 Calif. L. Rev. 439, 478 (1956) Professor Walter J. Derenberg pointed out that the earlier versions of the Lanham Act, until shortly before its enactment, included a provision which permitted the registrant of a trade mark to forbid repacking but "strong opposition by the representatives of the Antitrust Division of the Department of Justice" and others resulted in the elimination of this provision from the statute. This and the reported cases which have involved repacking, rebottling, repairing and renovating lead us to the conviction that we should not strain for the construction of N.J.S.A. 56:3-8 sought by Chanel. Whether and to what extent repacking and rebottling with full disclosure should be forbidden involves questions of policy which should be solved by the Legislature and not by our filling into the statute that which the Legislature did not place therein.
Chanel urges that in any event the reference to "Chanel No. 5" in the sale of its rebottled cologne, a fragile substance easily imitated and adulterated, is unfair competition. It argues that as a practical matter it is impossible to police the quality of the flaconettes. Furthermore, "There is an air of exclusivity associated with the name * * * one purchases Chanel because it is Chanel. Defendants have taken this product, placed it in a cheap package and is marketing it * * * for one dollar per dram in a quantity not sold by *25 plaintiffs. The fact that the product is sold for the price of one dollar to the consumer * * * in and of itself is enough to injure the reputation and good will of the plaintiffs."
We do not doubt that dilution of a trade-mark may be enjoined. Great Atlantic & Pacific Tea Co. v. A & P Trucking Corp., 29 N.J. 455 (1959). However, on the record before us we are not convinced that such dilution takes place when the facts are fully disclosed to the purchaser. Chanel authorized the sale of its perfume by its selected retailers for $2 for one ounce. We cannot take judicial notice that the sale of an eighth of an ounce for $1 or 89 cents (the resale price in some stores) or $7 to $8 per ounce cheapens plaintiffs' product. Chanel introduced no evidence to show that defendant's activities did have an effect upon the buying public or on Chanel's reputation, nor was there substantial evidence of actual confusion.
However, laying aside the question whether here such proof is essential (cf. Great Atlantic & Pacific Tea Co. v. A & P Trucking Corp., supra, at 459; "Dilution: Trademark Infringement or Will-O'-the Wisp," 77 Harv. L. Rev. 520, 531 (1964)), we agree with Judge Herbert that Chanel's method of operation allowed rebottling.
Chanel's price list permitted rebottling and reselling to "a wholesaler, retailer or consumer" provided that the price of "1 ounce or any fraction thereof" was to be $2. There is nothing in Chanel's fair trade contract which says in what style or quantities the cologne may be rebottled or repackaged. In short, if defendant's flaconettes were sold for $2 each with full disclosure, Chanel would have no cause whatever to complain. Chanel does not argue that it was illegal for defendant to buy the cologne or to resell it to wholesalers. If defendant had sold it at retail it would have been bound to abide by the price fixed by Chanel, but defendant is a wholesaler selling to wholesalers.
However, the difficulty of policing the rebottled product to make sure it is genuine, unadulterated and undeteriorated makes it doubly important that the buyer be told the *26 facts fully and unmistakably. Chanel is entitled to be protected against confusion and the likelihood that a buyer might think that Chanel bottles and sells the flaconettes or is responsible for its contents. We think the defendant's labeling, packaging and placards are not sufficiently explicit to accomplish those ends. We hold that defendant's labels, packages and advertising matter should not mention Chanel No. 5 except in type of the same size as that which says the cologne was rebottled by Casa Flora Company, at Bloomfield, N.J., and they should say that it was done without the approval of plaintiffs who assume no responsibility for the contents. Cf. Prestonettes, supra; Bourjois, Inc. v. Hermida Laboratories, 106 F.2d 174 (3d Cir. 1939). The exact style, arrangement and wording of the labels, the packaging, and the advertising and their positioning on the flaconettes, the packages and the placards we think should be settled by the trial court. It is not our our intention to bind the trial court to the exact wording mentioned above, so long as the guidelines we have laid down are followed.
The judgment is modified as above set forth and the case is remanded to the trial court for further proceedings not inconsistent with this opinion. No costs.

ADDENDUM
After the above opinion was filed, we learned that on February 27, 1968 Chapter 311 of the Laws of 1967, N.J.S.A. 24:6D-1 to 24:6D-3, was approved effective immediately. Since we dealt with the appeal upon the basis of the facts and the law as they existed when the case was decided by Judge Herbert, we express no opinion upon the effect of the new statute upon the issues. However, upon the remand which we have ordered the trial court may, if the question is raised by the parties, consider the bearing, if any, of the newly enacted statute upon the issues and the disposition to be made of the case.