# FIDELITY BOND & MORTGAGE CO. v. FIDELITY MORTGAGE CO. et al.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1926.)

No. 4494.

1. **Trade-marks and trade-names and unfair competition ⊕⇒67.**

One person has always right to engage in business in competition with another already engaged in such business.

2. **Trade-marks and trade-names and unfair competition ⊕⇒70(3)—St. Louis corporation having assumed name of Fidelity Bond & Mortgage Company in 1921, when it started selling guaranteed bonds, held not entitled to injunction as for unfair competition against Fidelity Mortgage Company of Cleveland, selling guaranteed certificates, who had used such name since 1915, although not selling certificates until 1923.**

St. Louis corporation, doing business under name of Fidelity Bond & Mortgage Company, having assumed such name in 1921, when it started selling bonds guaranteed by it, *held* not entitled to injunction because of unfair competition, as against corporation situated in Cleveland, selling guaranteed certificates under name of Fidelity Mortgage Company, where such company had used its name since 1915, although having started selling guaranteed certificates in 1923, there being distinct difference in securities sold by different corporations.

3. **Trade-marks and trade-names and unfair competition ⊕⇒85(2)—Corporation having advertised, "Incorporated 1913," when in fact it took name in 1921, on seeking injunction against corporation using similar name, is confronted with maxim that one coming into equity must come with clean hands.**

Corporation, which had used, in advertisement, "Incorporated 1913," when in fact it did not take its present name until 1921, and had entered present business, on seeking injunction against corporation using similar name, is confronted with maxim that one coming into equity must come with clean hands.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Suit by the Fidelity Bond & Mortgage Company against the Fidelity Mortgage Company and the National Surety Company. Decree for defendants, and plaintiff appeals. Affirmed.

James Love Hopkins, of St. Louis, Mo. (Hull, Brock & West, of Cleveland, Ohio, on the brief), for appellant.

Frank H. Pelton, of Cleveland, Ohio (Krueger & Pelton and Tolles, Hogsett, Ginn & Morley, all of Cleveland, Ohio, on the brief), for appellees.

Before DENISON and MOORMAN, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This appeal involves a case of alleged unfair competition. The appellant was plaintiff below, and the particular—the sole particular—in which it claimed that the appellees had been guilty of such wrongful conduct was in the use of the word "Fidelity" in the name of the first of the two appellees, in connection with the broadening of its business as hereinafter set forth. The relief sought was an injunction against such use by that appellee and an accounting against both.

The appellant is a Missouri corporation. It became such under its present name in November, 1921. It had been incorporated under the name of the Menteer Realty Company in 1913. The business which it transacted, whilst it had that name, was described by its president in his testimony, on direct examination, as a general real estate loan and mortgage business, and on cross-examination as a general brokerage and construction business. Upon the change of name it entered upon the sale of bonds secured by mortgage on real estate, the payment of which it unconditionally guaranteed. It claims to have been the first to enter upon the sale of such bonds so guaranteed. Its principal office and place of business is at St. Louis, with branches at Chicago and Denver. It at once began to advertise its business through the newspapers and by circularization. These newspapers, except the Christian Science Monitor, of Boston, and two in Tennessee, were located in Missouri, Illinois, Iowa, and Colorado. It began to advertise in the American Review of Reviews, of the so-called group of quality magazines, in February, 1924, and continued so to do each month for all the time covered by the evidence. It was so doing when the suit was brought June 14, 1924. In such advertisement it had then spent $70,000, and its secretary testified that it was then spending in advertising $50,000 a year. At the time the suit was brought there were outstanding something like 3,000,000 of such bonds, which it had sold and distributed in 35 states, the District of Columbia, and Canada. The bonds had been advertised and sold in Ohio and the city of Cleveland therein. These bonds were principally referred to in the advertisements as "Fidelity Bonds," but also as "Fidelity first mortgage real estate bonds," the former being the short name for the latter.

The appellee the Fidelity Mortgage Company is an Ohio corporation. It was incorporated in 1915; i. e., six years before appellant took its present name. Its sole office and place of business is in Cleveland, Ohio. It acquired an office building, possibly 10 stories high, which was known as Fidelity Mortgage Building. It is not unlikely that this name is inscribed on or affixed to the building. Until the year 1923, it dealt in bonds secured by first and second mortgages, in about even amounts, on newly improved real estate in Cleveland. It does not appear whether it guaranteed their payment; likely, it did not. In that year it began to deal in what it termed "participation certificates," secured by first mortgage on such real estate and guaranteed by it and the appellee National Surety Company. A note was executed by the mortgagor to an independent trust company—between June and August, 1924, the Lake Erie Trust Company began to act as such company—for the entire loan, to secure which a mortgage was given to the trust company, with whom the note was deposited. Against the note and mortgage were issued the participation certificates, identified by the trust company. Until May, 1924, the appellee mortgage company confined its advertisements to the newspapers of Cleveland. In the May number, 1924, of the American Review of Reviews, it caused to be inserted an advertisement of its business. The proof of this advertisement was submitted to appellant by the publisher in March, 1924. This was the first time, according to its claim, appellant became aware of the existence of the appellee mortgage company and its business.

Shortly after the issuance of the May number, 1924, of that periodical the suit below was brought. The bill alleged that in the month of July, 1923, appellant had negotiations with the appellee surety company in regard to its guaranteeing the former's bonds, which resulted in no agreement being entered into; that through these negotiations that appellee became aware of appellant's name, and its methods of business and advertising; and that it thereafter induced the appellee mortgage company to enter upon the line of business of which it complains, to the end that its securities might be sold as and for appellant's. Such is the ground upon which it claimed that the appellee surety company became accountable to appellant for the injury which it claimed to have thus sustained. Apparently the appellant would not have made complaint, if the appellee mortgage company had not begun to adver-

tise its securities, nationally, by the insertion in the American Review of Reviews, the same periodical in which appellant was advertising, and that just after it had begun to advertise therein, thus bringing the securities of the former more entensively into competition with those of the latter. It evidently was greatly concerned by reason thereof, because it brought its suit almost immediately after the appearance of the May issue of that periodical, containing the advertisements of both in it. The allegations in its bill evidently were made in heat, if not in passion, for in so far as they concerned the surety company they were utterly without basis. Its arrangement with the appellee mortgage company was not the result of the fruitless negotiations with the appellant in July, 1923. That appellee had broadened its field of operations, and the surety company had undertaken to guarantee its issues, before those negotiations; and appellant was told this whilst they were going on, though appellee mortgage company's name was not given.

Though the mortgage company claims that it was not aware of the existence of appellant and its business until it saw the May, 1924, issue of the American Review of Reviews, the circumstances create the suspicion that it was led to advertise in that periodical by the advertisement of the appellant in the February, 1924, issue, with a desire to lay its securities before those who might possibly become appellant's customers. Immediately thereafter it took up the matter of advertising with its publishers. But there is no possible ground for claiming that its purpose was to win customers from appellant in any other way than by perfectly legitimate competition. Its securities had talking points, which appellant's did not. Its mortgages were upon newly improved real estate in the growing and prosperous city of Cleveland. They were not incumbered by coupons. There was no danger of delay in collecting the interest, by the investor forgetting the due date or by their loss, and there was no trouble in cutting them. Checks were sent for the interest when it became due, and were as easily collectible, if not more so, than dividend checks. In addition to the real estate security and the appellee mortgagee's guaranty, they had the additional security of the guaranty of a reputable and standard surety company. There was no possible reason for the appellee mortgage company wanting to pass off its securities for appellant's. On the other hand, it was concerned to bring out that they were not, and that by comparing its securities with appellant's.

The circumstances create the suspicion that it was a fear that this sort of competition might be effective, rather than that the appellee mortgage company's securities might be passed off for appellant's, that prompted the bringing of the suit. It cannot be said that the securities of the two companies were in the same class, or that the appellee mortgage company in broadening its field of operation entered appellant's field. The securities of the appellee mortgage company were not in the same class as those of appellant. They were in a different class. That appellee did not enter appellant's field. It entered a different field. It is just as true to say these things as that appellant, when it began business under its present name, put out securities in a different class from those of the appellee mortgage company, and entered a different field from that of the latter, in that those securities were guaranteed by it, whereas those of the latter were not, if indeed such was the case. And it would seem that the appellee mortgage company, as the first comer, had as much, if not more, reason to complain of appellant's adoption of a name with the word "Fidelity" in it, when it began to transact an entirely different business from that which it had theretofore been engaged in, than appellant has to complain of the appellee mortgage company continuing to use its old name, when it broadened its field of operation by putting out a new class of securities. The appellee mortgage company has done absolutely nothing to cause appellant's would-be customers to think that in purchasing its securities they were purchasing appellant's, beyond continuing to use its old name with the word "Fidelity" in it, when it broadened its field of operation. It is not claimed that it has.

There is nothing in its advertisement in the American Review of Reviews which is calculated to mislead. The sole particulars in which there is any sameness are that each is a full page advertisement; each has a border; each emphasizes the word "Fidelity" in its name, in that it is in larger type than the other words in the name and the advertisement; about 35 of the words in the appellant's advertisement, which contained about 135 in all, appeared in appellee mortgage company's advertisement, which contained about 120 in all, of which about 15 were particles, prepositions, copulatives, and personal pronouns, and each requests that a book-

let be sent for. Otherwise, they are different. It is conceded that the borders are different, and typing is different. At the foot of that of appellee mortgage company's is a picture of its building, across the face of which is its name and address. This feature is entirely lacking from appellant's. It would seem that the publisher had in mind to make the appearance of the two different. In more substantial matters there is a radical difference. The subject-matter differs in the talking points. The booklet which appellee mortgage company requests be sent for is referred to as "Booklet No. 30," whereas appellant is referred to as being entitled "Your Money—Its Safe Investment." The address of the one is given as at Cleveland, and that of the other as at St. Louis, Chicago, and Denver. In appellee mortgage company's advertisement its securities are termed "Fidelity participation certificates" and "Fidelity first mortgage participation certificates," whereas in appellant's advertisement its securities are termed, "Fidelity bonds" and "Fidelity first mortgage bonds." Furthermore, the word "Fidelity," in appellee mortgage company's name, is in larger type than the same word in appellant's name. If it so be that, when that appellee began to advertise in the American Review of Reviews, it was aware of the fact that appellant was advertising in it also, this greater emphasis on the word "Fidelity" may be accounted for by a desire to let customers know that it too was a "Fidelity" company, as well as appellant; and of this appellant had no right to complain.

It is not open, therefore, to claim that there was any liability to confusion on the part even of "ordinary and unwary" purchasers, much less of purchasers of the character of those who invest in securities, in thinking that they were purchasing appellant's securities, when in fact they were purchasing those of the appellee mortgage company. Two officers of separate St. Louis bond or investment companies testified that in their opinion there was a liability to such confusion, but we cannot accept their opinions. There was but a single instance testified to which can be claimed to have been a case of confusion. That happened in December, 1924, six months after the suit was brought. A woman residing in Galveston, Tex., wrote a letter, addressed to appellee mortgage company, requesting it to send her "Booklet No. 30," which she said she had seen "advertised in American Review of Reviews." This letter was inclosed in an envelope addressed to appellant. This mistake can be accounted for, not by confusion, but by pure accident, in not carefully observing, when the envelope came to be addressed, that the company to whom it was addressed was not that of the one whose booklet was requested to be sent.

[1] The case we have here may be disposed of on the basis that it is a case presenting the question as to the right of a person to use his own name in a business in which another of the same name is already engaged. One person has always the right to engage in a business in which another is already engaged, and to enter into competition with such other person. This is an inalienable right of every person. But, suppose his name is the same as that of such other person; what are his rights in regard to the use of his own name in carrying on such business? This can be made to be a case of this sort, and presenting this question in this way. The appellant claims that the appellee mortgage company is putting out the same class of securities as it, and that it has entered its field of operation. Though the appellee mortgage company was the first to adopt the name with the word "Fidelity" in it, appellant was the first to occupy that field, and because thereof the appellee mortgage company has no right to enter it with a name having such word in it. It is in this way that this case may be said to come to be one like that suggested; i. e., of a person having the same name as that of another entering a business in which such other is already engaged, and hence as raising the question of his right to do business under his name.

Such a case has been twice considered by the Supreme Court of the United States. In the case of Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 S. Ct. 609, 49 L. Ed. 972, it was held that a manufacturer of typewriters, under the name "Remington" and "Remington Standard," was not entitled to protection against the adoption, by persons bearing, respectively, the surnames "Remington" and "Sholes," of the name "Remington Sholes" for their typewriters, and the giving of that name to the corporation formed for their manufacture and sale, where the only confusion in the minds of the public as to the origin of the product results from the similarity in names, and not from the manner of their use. In the case of Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616, it was held that the purchaser of all the property and assets as a going concern, together with the business, good will, and trade rights of a safe and lock manu-

facturing company, which was to wind up its affairs, had the right to use the surname of the founder, where that name had acquired a commercial value, and to be protected by an injunction against a rival safe-making corporation, organized by the sons of the founder, who were members of the original corporation, forbidding the use of the surname of such founder, either alone or in combination, in the corporate name, on safes, or in advertisements, unless accompanied by information that the corporation is not the original corporation or its successor, or that the article is not the product of such original company or its successor.

It has never been held, sb far as we are aware, that one has no right to engage in a particular business in his own name, because another of the same name is already engaged in such business in his name. The most that has been held is that circumstances may. be such that he should prevent his goods being confused with those of the other, by explaining in some way that they are his goods, and not the goods of such other person.

[2] The relief which the appellant seeks is an injunction against the use by appellee mortgage company in its business of its name, because it contains the word "Fidelity" in it, notwithstanding such name is its original name, selected six years before the appellant adopted its name, with that word in it. It seeks no other. It is not unlikely that, if the matter were suggested, it would claim that it is entitled to have the appellee mortgage company chisel its name from its 10-story building, if it is inscribed thereon, or take down its sign if it has a sign bearing its name attached thereto. The most that it could claim is that the appellee mortgage company should take pains so to explain its business that customers for investment securities would understand that its securities are not those of the appellant. But no such explanation is called for. The appellee company's securities speak for themselves. The features which distinguish them from appellant's securities are so patent that any one who has sense enough to buy an investment security cannot fail to distinguish between them. There is not the slightest danger of his being misled.

[3] There is another aspect of this case to which reference should be made. In appellant's advertisement it has underneath its name these words, "Incorporated 1913." This, if it means anything, means that appellant, under its present name, has been engaged in its present business since 1913. There was no other occasion to mention this

fact than to create this impression. This is untrue. Its original name of Menteer Realty Company, and its business down to November, 1921, was either the general real estate loan and mortgage business or a general brokerage and construction business. It never took its present name until November, 1921, when it, for the first time, entered its present business. Because of this appellant is confronted with the maxim that one coming into equity must come with clean hands.

Decree affirmed.