The BULOVA WATCH COMPANY, Inc., a corporation, Plaintiff,

v.

The ALLERTON COMPANY, Inc., a corporation, and A. Hirsch Co., Defendants.

Civ. A. No. 56 C 1049.

United States District Court
N. D. Illinois, E. D.
March 14, 1963.

Arvey, Hodes & Mantynband, Chicago, Ill., for plaintiff.

Melvin L. Goldman, Richard James Stevens, Askow, Stevens & Hardy, Chicago, Ill., N. A. Giambalvo, Nelson, Boodell, Foster, Sugrue & Crowley, Chicago, Ill., for defendants.

ROBSON, District Judge.

This is a trade-mark, unfair competition, and injunction suit [1] involving plaintiff's trade-marks covering "Bulova" [2] and some auxiliary words in respect to watches. The gist of the charge is defendants' removal of the plaintiff's Bulova watch movements from the cases in which Bulova had placed them in the process of manufacture, and recasing said movements in defendants' diamond cases with different crowns,[3] and selling the resultant product to the public [4] through catalogs. The name "Bulova" remains unchanged on the face of the movement. The catalog presentation described the placing of the Bulova (or Elgin or Hamilton movements) into a "Treasure Mates" case [5] and makes a guarantee over the name of defendant The Allerton Company, Inc.[6]

By order of October 16, 1961, the issue of damages was reserved until the determination of the issue of liability.

---

1. Filed June 19, 1956, based on 15 U.S.C. § 1121, and 28 U.S.C. §§ 1338, 1332.

2. Of fifteen registrations eight were for "Bulova" alone, four added numbers thereto and the remaining three were: "Bulova Trylon and Perisphere," "America Runs on Bulova Time," and "Bulovitas." The first registration was June 3, 1924, and the latest, March 20, 1956. Plaintiff states it has used the trade name Bulova since 1907. Plaintiff also cites its trade-mark registrations in 47 states, which fact defendants deem here immaterial. Plaintiff also had thirteen trade-marks secondary to "Bulova" beginning in 1928: American Girl, Debutante, Dolly Madison, Duchess, Goddess of Time, Golden Goddess, Golden Treasure, Martha Washington, Miss Liberty, Miss America, Miss Universe, Rhapsody and Sungold, which phrases were used in conjunction with the word "Bulova," on tags affixed to the watches and to the boxes containing them.

3. The winding implement.

4. Plaintiff claims the disassembly and reassembly processes are injurious or potentially injurious to the watch movement by reason of unskillful handling or improperly designed case. The public is deceived into believing there is a Bulova guarantee on such watches when there is not.

5. Defendants' case.

6. Hereinafter called Allerton.

*Outline of Contentions*: Plaintiff's legal contentions are:

(1) The defendants' watch is a "new construction" composed of a watch case manufactured by persons other than the plaintiff and a watch movement obtained from disassembling plaintiff's watch. The sale of such newly constructed product under plaintiff's trade-mark *per se* constitutes trade-mark infringement and unfair competition.[7]

(2) The sale of the defendants' watches bearing plaintiff's trade-mark constitutes trade-mark infringement and unfair competition because the defendants fail to disclose to the public fully and truthfully the manner in which they have utilized plaintiff's original trade-marked watch to produce defendants' watch.[8]

(3) The instances of actual confusion appearing in the record confirm the legal conclusion that the defendants are guilty of trade-mark infringement and unfair competition.[9]

Defendants on the other hand argue:

(1) They have the right to incorporate a trade-marked article, to-wit, a watch movement bearing Bulova's trade-mark, in a diamond decorated watch case not of Bulova's manufacture; and to sell the completed product upon fairly and reasonably advising the purchaser of the nature of the complete product, to the end that the purchaser may not reasonably be confused.[10]

(2) Defendants' catalog page, being the sole presentation by defendants of their product to the public, does fairly, reasonably and properly apprise each purchaser of the nature of his purchase, and no purchaser will reasonably be confused. The printed guarantee accompanying each of the defendants' products likewise fairly and reasonably apprises each purchaser of the nature of his purchase, and no purchaser will reasonably be confused thereby.[11]

(3) Plaintiff by its conduct has tacitly admitted that defendants' sale of such

7. Ingersoll v. Doyle, 247 F. 620 (D.C. Mass.1917); Coca-Cola Co. v. Bennett, 238 F. 513 (C.A.8, 1916); General Electric Company v. Re-New Lamp Co., 121 F. 164 (D.C.Mass.1903), (S.C. 128 F. 154), also 128 F. 154 (D.C.Mass.1904); Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947), aff'g 156 F.2d 488 (C.A.2, 1946); Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924), rev'g Coty v. Prestonettes, Inc., 285 F. 501 (C.A.2, 1922).

8. Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924); Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); Bayer Co. v. Shoyer, 27 F.Supp. 633 (D.C.Pa.1939); Singer Mfg. Co. v. American Appliance Co., 86 F. Supp. 737 (D.C.Ohio, 1949); Singer Manufacturing Co. v. Briley, 207 F.2d 519 (C.A.5, 1953); Singer Mfg. Co. v. Redlich, 109 F.Supp. 623 (D.C.Cal.1952); General Electric Co. v. Schwartz, 99 F.Supp. 365 (D.C.N.Y.1951); Bourjois, Inc. v. Hermida Laboratories, 106 F.2d 174 (C.A.3, 1939); Stahly, Inc. v. M. H. Jacobs Co., 183 F.2d 914 (C.A.7, 1950).

9. Ingersoll v. Doyle, 247 F. 620 (D.C. Mass.1917); Champion Spark Plug Co.

v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); Independent Nail & Packing Co. v. Stronghold Screw Products, 205 F.2d 921 (C.A.7, 1953). Defendants state each of the six individuals involved in the claimed instances of confusion received a brand new watch from Bulova in exchange for the old watch.

10. Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924); Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Societe Comptoir De L'Industrie, etc. v. Alexander's Department Stores, Inc., 190 F.Supp. 594 (D.C.N.Y. 1961).

11. S. C. Johnson & Son, Inc. v. Johnson, 266 F.2d 129 (C.A.6, 1959); Lawyers Title Insurance Co. v. Lawyers Title Insurance Corporation, 71 App.D.C. 120, 109 F.2d 35 (D.C.D.C.1939); Bayer Co., Inc. v. United Drug Co., 272 F. 505 (D.C.N.Y.1921); Fidelity Bond & Mortgage Co. v. Fidelity Mortgage Co., et al., 12 F.2d 582 (C.C.A.6, 1926); Jack Daniel Distillery, Inc. v. Hoffman Distilling Co., et al., 190 F.Supp. 841 (D.C.Ky.1960); Hiram Walker & Sons, Inc. v. Penn Maryland Corp., 79 F.2d 836 (C.C.A.2, 1935).

Treasure Mates watches has been conducted candidly, honestly and fairly.[12]

■ Conclusion: The Court concludes there has been an infringement of plaintiff's trade-mark in the recasing of its movement in defendants' case, retaining plaintiff's trade-mark on the face of the watch. The Court further concludes that the page in defendants' catalog is of such a misleading character as to constitute unfair competition.

Facts Stipulated: The parties have stipulated to many of the material facts of this case. This stipulation reveals that plaintiff, The Bulova Watch Company, Inc.,[13] a New York corporation, was preceded by the Bulova Watch Company. That company was founded by Joseph Bulova in 1875, incorporated on June 6, 1911, with change in name in 1923. The defendants, Illinois corporations, are The Allerton Company, Inc., a wholly owned subsidiary[14] of defendant A. Hirsch Co.[15] The latter succeeded a partnership established by Adolph Hirsch in 1878, which incorporated in Illinois in 1918, and has always been conducted by immediate members of the Hirsch family.

Plaintiff is engaged primarily in the business of manufacturing, distributing and selling watches,[16] and the name "Bulova" is widely and generally known to the public as identifying its watches. It is stipulated that both plaintiff and defendant Hirsch have enjoyed excellent reputations, both in the trade and financially.

Defendant Hirsch had held franchises from Elgin Watch Company,[17] Hamilton Watch Company[18] and Waltham Watch Company[19] for the national distribution of their products, but these companies began successively in 1946 to distribute their products by direct sales to the retailers and terminated the Hirsch franchises.

In the watch industry the following are considered separate and distinct articles of commerce: complete watches, watch movements, watch cases, watch bands, and other components and parts of watches. While some manufacturers sell watch movements and cases separately from completed watches, plaintiff has never done so. It does, however, sell watch components and parts, other than watch movements and cases as separate and distinct articles of commerce.

It is stipulated that for more than forty years various wholesale and retail watch dealers in the United States have transferred watch movements from the original cases into other cases,[20] usually diamond-decorated, not made by the manufacturer of the watch movement, but the number of movements so transferred is but a small percentage of the total number of complete watches sold in the United States. Catalog houses have for many years listed watches with movements of nationally advertised manufacturers in watch cases not made by the manufacturer of the watch movement.[21]

Since 1946 defendant Hirsch has imported approximately a million Swiss

12. Plaintiff answers it would have been futile for it to have warned defendants to cease infringing activities in view of their resistance to this suit; furthermore it is always entitled to an injunction against future infringement. (United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); Stork Restaurant, Inc. v. Sahati, 166 F. 2d 348 (9th Cir. 1948))

13. Hereinafter called Bulova.

14. Incorporated in February, 1951.

15. Hereinafter called Hirsch.

16. It is stipulated that the name "Bulova" is widely and generally known to the pub-

lic as identifying the watches manufactured and sold by the plaintiff.

17. Elgin had some 50 distributors in the United States.

18. Hamilton had some 25 wholesale distributors in the United States.

19. Waltham had some 60 distributors in the United States.

20. Which plaintiff maintains is immaterial in this trade-mark and unfair competition suit.

21. Not deemed to be proof one way or the other as to Bulova movements.

movements from Switzerland and cased them in its own shop into American-made cases.

Plaintiff guarantees only watches that have been manufactured and assembled by it and its guaranty does not extend to defendants' products.

The stipulation further states that plaintiff's watch cases are manufactured to accommodate plaintiff's watch movements, including the 6¾ x 8 [22] ligne [23] 17 jewel ladies' watch movements. The watch cases [24] and watch movements are manufactured principally, but not entirely, in plaintiff's factories in Providence, Rhode Island, and Switzerland. Plaintiff's assembly of movements and cases is done only in its own factory.[25]

It is stipulated that during the years 1953 to date the defendants have purchased Bulova watches from various dealers, but in no instance directly from plaintiff, and have transferred the movements, including the dials containing the name "Bulova", from their original Bulova cases into diamond-decorated cases not manufactured by plaintiff but for defendants Hirsch and Allerton by Major Watch Case Company. During those years defendants have sold the recased watches to some sixty-one "catalog houses." Defendants have sold similarly recased Hamilton movements to the same houses since 1958. They have done the same with respect to Elgin watches since 1952.[26]

It is further stipulated that:

"The catalog houses * * * sell their merchandise (including watches purchased from the defendants, Hirsch and Allerton) to the general public through catalogs which they issue. * * * The defendants, Hirsch and Allerton, have prepared, printed and distributed to such catalog houses color pages or insert sheets for insertion in these catalogs. * * *"

Many hundreds of thousands, sometimes over a million and a half,[27] of these "in-

22. Width and length of watch movement.

23. A ligne is a unit of measurement in the watch trade. It equals 2.0833 millimeters. This is a common size used in ladies' watches and a size widely sold throughout the United States. Cases to house watches that size are made by numerous American manufacturers. Defendant Hirsch purchases the cases in which it places the Bulova movements from the Major Watch Case Company of New York City, which is a reputable and experienced manufacturer of watch cases.

24. Bulova cases are a combination of German silver, stainless steel and solid gold (14–18 carat) specially designed to accommodate its own movements.

25. Plaintiff's technical staffs set the tolerance in the seat of the case receiving the movement as not being oversized in excess of ¹⁄₁₀₀th of a millemeter, and cannot be undersized to any extent. Plaintiff points out defendants have no "facilities to make any material tests [on the watch cases] nor do they analyze the cases from an engineering standpoint with respect to specifications or precise measurements." Also, defendants inspect the cases "visually for cracks or scratches on the crystal, the finish of the casing and the set of the diamonds."

26. In the period 1952 to 1956, 90% of these Elgin movements were secured by purchasing Elgin watches from sources other than Elgin Watch Company, and 10% directly from Elgin Watch Company. In 1957 they purchased 50% of watches purchased from sources other than Elgin Watch Company, and 25% were Elgin movements purchased from Elgin Watch Company. In 1958 they purchased 50% of the Elgin movements from that Company, and 25% by purchasing watches from that Company, and 25% by purchasing Elgin watches from other sources. Since 1959 they have purchased all Elgin movements from that Company.

27. The number of insert sheets furnished were:

| 1952 — | 970,000 | 1957 — | 1,512,000 |
| 1953 — | 900,000 | 1958 — | 833,000 |
| 1954 — | 1,150,000 | 1959 — | 778,000 |
| 1955 — | 1,331,800 | 1960 — | 112,000 |
| 1956 — | 1,558,000 | | |

In the years 1958–1960, in addition to these numbers, an unknown quantity of insert sheets were prepared by catalog houses from four-color positives supplied by defendants Hirsch and Allerton to some of the catalog houses.

sert sheets" were furnished the catalog houses in the years 1952 to 1960.

Plaintiff's average annual sales for the years 1953 to 1956 exceeded 1,750,000 watches for the sum of over $45,000,000, and from 1957 to 1959, an average of 1,500,000 watches for over $40,000,000. Ninety-six per cent of the dollar value of the sales from 1953 to 1960 were to some 17,000 retail dealers for resale to the public, and but four per cent to catalog houses, trading stamp companies and others. Plaintiff had expended over $40,000,000 in advertising its trade name "Bulova" in the eight year period [28] commencing April 1, 1953, and ending March 31, 1961, $35,000,000 of which was devoted to advertising Bulova's watches.

The defendants sold a total of some 8,025 watches containing Bulova movements to catalog houses for about $326,200 during the eight years from 1953 to 1960.[29]

Bulova annually receives about 50,000 watches for servicing at its factory, and when Bulova movements are not housed in Bulova cases, it returns them unrepaired to the sender with an explanatory letter. This letter states that only when a movement is housed in a Bulova case is it considered genuine because "each component plays a vital role in the continued functioning of the watch. * * * [W]e cannot assume responsibility for Bulova movements housed in cases not specifically manufactured by Bulova to fit the movement. * * *"

Among the other facts stipulated to are: Discoloration of watch cases may be caused by acid perspiration of the wearer notwithstanding the manufacturer has used good quality material or improper methods used in soldering an end piece or other attachment to the watch case. Both Bulova and defendants maintain repair departments to cover their guarantees, which is free of charge except in case of clear abuse of the watch. Between December 16, 1953, when plaintiff learned defendants were recasing Bulova movements, and June 1956, when suit was begun, plaintiff did not advise the defendants it objected to the practice or wished its discontinuance.

Bennett Brothers, Inc., a customer of Bulova, since 1951, operates both a catalog house and several retail establishments. It purchased some $25,835 of men's and women's watches from plaintiff in the six years 1951 to 1956, both inclusive. In the four years 1957 through 1960, it sold $27,671.84 of watches to Bennett Brothers, Inc. In the ten years 1951 through 1960 plaintiff sold some 2,334 to that company. This company in 1953 and from 1955 to May, 1959, recased some 526 Bulova watches.[30] Since then it sold all Bulova watches in the same condition in which it purchased them.

In its argument plaintiff cites the fact that defendants' Treasure Mates display box bears the words printed on the inside puff, as one opens the box: "Treasure Mates—Genuine Diamond Case—with 17 J Bulova Movement." There is no other wording on the inside or outside of the display box.

Plaintiff points out that the insert sheets delivered to the catalog houses are placed by the catalog houses in their respective catalogs. The customer interested in buying a watch from a catalog house is shown a catalog page consisting of the insert page, with no additional literature furnished by the defendants.

| Year | Quantity | Dollar Amount |
|---|---|---|
| 1958 | 500 | $27,000.00 |
| 1959 | 575 | 32,000.00 |
| 1960 | 575 | 32,200.00 |

28. Since 1935 plaintiff had expended over a hundred million dollars advertising its trade-name and products.

29.
| Year | Quantity | Dollar Amount |
|---|---|---|
| 1953 | 1200 | $43,000.00 |
| 1954 | 1350 | 49,000.00 |
| 1955 | 1300 | 48,000.00 |
| 1956 | 1800 | 69,000.00 |
| 1957 | 725 | 26,000.00 |

30. Plaintiff states Bennett was requested to stop the practice as soon as plaintiff became aware of it and after written notice Bennett thereupon stopped the practice of recasing Bulova's movements.

Plaintiff states the issue in the controversy as not one of the use of a confusingly *similar* trade-mark, but of the right of the defendants to use the *genuine* trade-mark of the plaintiff upon the goods being sold by the defendants, which is permissible only where the product being sold is merely an alteration or reconditioning of the original product, falling short of a new construction. However, full and truthful disclosure must be made concerning the nature of the alteration or reconditioning.

Plaintiff points out that it markets neither watch movements nor cases as separate items (although it does market some other separate watch components). Therefore, selling any watch bearing a Bulova trade-mark is tantamount to a misrepresentation that it is plaintiff's, Bulova's, product in its entirety, and the sale would be competing with plaintiff's own watches by it manufactured and assembled in diamond-decorated cases. Further, plaintiff contends defendants' incorporation of the Bulova movement in their own case is a "new construction" [31] not entitled to bear the unexplained trade-mark of plaintiff. Plaintiff argues that defendants use the word "Bulova" "precisely as originally affixed by plaintiff and not merely as a collateral reference to identify a 'constituent in the article now offered as new and changed.'" If a description analogous to that prescribed in the case of Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924), were here spelled out, it would read, plaintiff maintains, thus:

"Treasure Mates, by Allerton & Company, not connected with Bulova, states that this watch contains a movement manufactured by Bulova Watch Company recased without Bulova authority in an Allerton case not manufactured by Bulova. This watch not guaranteed by Bulova."

Plaintiff maintains that for there to be full and accurate disclosure where a person seeks to use a trade-mark upon products other than the original product sold by the trade-mark owner the following is required: (1) The statement must be made that the repackaging, alteration or reconditioning has been made independently of the trade-mark owner.[32] (2) If it is a mechanical product it must itself bear an appropriate legend.[33] (3) Lack of authorization from the trade-mark owner to the defendant must be stated.[34] (4) Where parts or components not manufactured by the trade-mark owner are used in the changed product, that fact must be stated.[35] (5) Where the trade-mark owner's guaranty of the original product does not attach to the altered product, that fact must be disclosed.[36] (6) The plaintiff's trade-mark as such cannot be used on a changed product, although collateral reference to the manufacturer of a component used in the changed product is permissible.[37] (7) The use of the trade-mark in a repaired or reconditioned product, or the collateral

31. General Electric Company v. Re-New Lamp Co., 121 F. 164 (D.C.Mass.1903); Ingersoll v. Doyle, 247 F. 620 (D.C. Mass.1917).

32. Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924); Bourjois, Inc. v. Hermida Laboratories, Inc., 106 F.2d 174 (C.A.3, 1939); Bayer Co. v. Shoyer, 27 F.Supp. 633 (D.C.Pa. 1939).

33. Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947); Singer Manufacturing Co. v. Briley, 207 F.2d 519 (C.A.5, 1953); Singer Mfg. Co. v. American Appliance Co., 86 F.Supp. 737 (D.C.Ohio, 1949).

34. Bourjois, Inc. v. Hermida Laboratories, supra; Bayer Co. v. Shoyer, supra.

35. Prestonettes, Inc. v. Coty, supra; Singer Manufacturing Co. v. Briley, supra; Singer Mfg. Co. v. American Appliance Co., supra.

36. Bourjois, Inc. v. Hermida Laboratories, supra; Stahly, Inc. v. M. H. Jacobs Co., 183 F.2d 914 (C.A.7, 1950).

37. Prestonettes, Inc. v. Coty, supra.

reference to the name of the manufacturer of a component in a changed product must receive no more prominence than any other word in the required disclosure.[38] (8) The juxtaposition of the trade-mark or of the name of the manufacturer collaterally referred to in the disclosure must be such, relative to the defendant's name, as to avoid giving prominence to the trade-mark or its owner's name.[39]

Plaintiff points out that defendants give no instructions to the catalog houses with respect to merchandising. A customer of the catalog house would only be shown the catalog page.

Plaintiff asserts that "The trade-mark BULOVA which was initially placed thereon by the plaintiff appears on the dial of the watch in all its unqualified significance as identifying a complete watch manufactured by the plaintiff. The inscription, 'Treasure Mates,' on the outside of the back cover fails completely to convey any intelligible message to an observer." Further, the box in which the watch is sold bears the words "Treasure Mates—Genuine Diamond Case—with 17 J Bulova Movement * * * printed on the inside. * * * There is no other wording on the inside or outside of the display box. * * *"

Plaintiff further assails the guarantee form, which while going further in giving information than anything else, still falls short of advising the purchaser of the true facts. For all the unwary purchaser might guess, Allerton might be a subsidiary of or authorized by Bulova to distribute its watches, or possibly that both companies stand back of the guarantee.

Plaintiff further maintains that in trade-mark infringement and unfair competition cases it is not necessary to show *actual* instances of confusion since the test under the statute is *likelihood* of such confusion. (Independent

Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 205 F.2d 921 (C.A. 7, 1953); Barbasol Co. v. Jacobs, 160 F.2d 336 (C.A. 7, 1947)) Nor is likelihood of confusion even necessary where another's actual trade-mark is used. Nor need the evidence of confusion be extensive (Photoplay Pub. Co. v. La Verne Pub. Co., Inc., 269 F. 730 (3 Cir. 1921)). Plaintiff points out that since such a large percentage of watches is purchased as gifts the persons receiving the watches never see the catalog advertisement.

Defendants maintain that the business of recasing well-known watch movements of good quality into diamond-decorated cases is a long established and legitimate business (forty years old) in which business they are experienced and reputable. They assert that their recasing of the movements does not violate any of Bulova's trade-mark rights and their sales are made in an honest and candid fashion through catalog pages which honestly and reasonably inform purchasers that they are being offered Bulova movements (or other movements) fitted into Treasure Mates diamond-decorated watch cases. Plaintiff had express knowledge of defendants' watch recasing business for two and a half years without voicing objection, and defendants therefore assert laches.

Defendants cite these facts: Bulova's own service department manager before joining it had had retail stores in which he had sold recased movements and had on occasion himself recased movements. Tiffany & Company advertises Tiffany watches with Omega or Movado movements. The Wall Street Journal has advertisements of diamond watches with named movements. National Geographic Magazine had advertisements in the '20s offering choice of movements and cases. Defendants recase Elgin watch movements with purchase of movements directly from Elgin Watch Company, and

38. Prestonettes, Inc. v. Coty, supra; Singer Manufacturing Co. v. Briley, supra; Singer Mfg. Co. v. American Appliance Co., supra.

39. Bourjois, Inc. v. Hermida Laboratories, supra.

recase Hamilton movements from Hamilton watches purchased from dealers.

Defendants further state that numerous American manufacturers produce cases accommodating 6¾ by 8 ligne size watch movements, which are the common size watch movements. There are hundreds of American Watch case manufacturers.

Defendants enumerate the enviable service records of its long-time, competent, skilled employees in the recasing work; the high quality of their work and their work room and its facilities. They state the cases they use are carefully checked for tolerance and clearance of the movement. They describe the skill with which the watch movements are removed from the cases in which they are purchased and transferred to defendants' cases.[40] Defendants also cite the fact that Bulova movements before purchase may even have been removed from their cases several times by a jeweler for purpose of oiling or correction.

Defendants detail the inferior condition of all of the watches which were the basis of the confusion issue, raised by plaintiff, citing great wear, dirt and gumminess; poor repair, tarnished cases, poor cementing of crystals, need of cleaning, and peeling of bezel. Defendants note that between 1953 and 1960 the grand total of watches sent Bulova's repair department was about eight, or one-tenth of one per cent of all the units sold.

Defendants differentiate the decision in Ingersoll v. Doyle, 247 F. 620, on the facts. They claim that the dial (involved in that opinion) *is a part of the movement* and the substitution of a new one is an alteration of the movement, where-

as in the instant case the parties have stipulated that watch movements and watch cases are separate articles of commerce. And the recasing of the movement without affecting the movement in any way is no substantial modification of the movement nor a new construction within the terms of the Ingersoll opinion, but comparable to mixing face powder with a binder, as in the Prestonettes case, supra.

Plaintiff's authorities are discussed seriatim by defendants and differentiated on the ground that defendants are not "frauds, cheats, and thieves," fly-by-night operators, dealing with adulterated comestibles casually and hurriedly bought, nor dealing with items like spark plugs installed by service station mechanics, or with inexpensive but non-operating mechanical razors, but are marketing costly luxury diamond articles bought with care and deliberation, representing a substantial expenditure.

Defendants emphasize the negligible evidence of confusion adduced by plaintiff. Out of the 8,025 Treasure Mates watches with Bulova movements, plaintiff was able to unearth only eight [41] watches returned to plaintiff for repair, six of them from the owners, or but ⅒ of 1% of the watches sold, so that some confusion is inevitable because some of the public is bound to be undiscerning and careless. (S. C. Johnson & Son, Inc. v. Johnson, 266 F.2d 129 (6th Cir. 1959); Lawyers Title Insurance Co. v. Lawyers Title Insurance Corp., 71 App. D.C. 120, 109 F.2d 35 (1939)) To buttress this assertion defendants quote the Johnson case:

> "The owner of a trademark is not entitled to a guarantee against confusion in the minds of careless and

40. Which plaintiff maintains is immaterial to present legal issues, in that a trademark infringer cannot escape liability by asserting superior skill.

41. Plaintiff believes on the contrary that over a six months period from June to December, 1957, 129 watches were returned with cases not of Bulova manufacture, or an average of one per work-

ing day. Plaintiff further argues that owners' return of watches corroborates its contention that the public identifies the reconstructed watches as Bulova's. Plaintiff also explains the giving of new watches to these "confusion" issue witnesses in order to procure the use of their old watches as exhibits in this case.

indifferent buyers; * * * and merely occasional cases of confusion or thoughtless errors by very inattentive purchasers are of very little significance in trademark and unfair competition cases."

Defendants have requested this Court: " * * * to put itself in the position of a purchaser making a careful, deliberate, thoughtful, purchase of a diamond watch at a price ranging into the hundreds of dollars; and to study this [catalog] page carefully."

It is the catalog page currently in use. The Court has studied this page and concludes that the most probable impression a prospective customer would get would be that he was buying a *Bulova, Hamilton,* or *Elgin* watch in a diamond case. Those brand names are the most prominent words on the page (except the word "Honor"—which is advertising sales talk describing the prospective donee). The words Bulova, Hamilton, and Elgin were on a background of *red* and the eye first focuses on them. In not too prominent aspect are the words "Treasure Mates" which is defendants' name for its cases. In the block containing the guarantee the name Allerton appears twice. It appears to the Court that defendants' name is in too inconspicuous a position, size and color to convey to and impress upon an untutored and unwary purchaser the idea that Allerton Company assembled, *by first disassembling,* a Bulova watch, removing the movement and then recasing it with a different case and crown. It is not immediately apparent from a cursory examination of this page just what "Treasure Mates" means except to embellish the article with a fancy brand name, but *whose* brand is not immediately apparent.

Its proximity to the words Elgin, Hamilton and Bulova might even give the idea that it might be a product of those companies. Much later there appears the rather indirect explanation that Treasure Mates cases have some association with Allerton Company.

It is the Court's opinion that an absolutely frank and honest disclosure of the sponsorship of these watches would be a primary focus upon *Allerton Company and its manufacture of the diamond cases,* wherein have been placed *movements manufactured by others.* It is conceivable that defendants have the honest belief that this page with true and direct accuracy portrays the factual situation in the assemby manufacture of these watches. Defendants, however, have a background of knowledge which the purchasing public might not possess—that it has long been the custom in the watch industry to remove movements manufactured by other companies and recase them. Defendants stress the fact that the purchase of an expensive item like a watch is a studied and considered act, not casual in nature, and therefore the purchaser reads the catalog page with care and becomes educated to the fact that here are two items manufactured by different entities, assembled and distributed under the defendants' guaranty. By the same token, expensive items such as watches are not routine purchases and the public's education in the art of their manufacture is very limited. They are aware only of the trade names of the several well-established watch companies, such as those whose movements defendants use.

If this were a catalog page usable only by *dealers* rather than the public, defendants' argument would have much greater weight. Dealers might realize the distinction between "movements" and watches, whereas the public might not.

Defendants refer to the advertisements of Tiffany. It is notable that in those advertisements Tiffany *prefaces* everything with its own established name. Allerton does not do that. Its name appears for the first time well down the page, and in much smaller type and less conspicuous color.

As plaintiff points out this is not the usual trade-mark and unfair competition case of using a confusingly similar mark on merchandise in the same field. This

is defendants' use of plaintiff's own trade-mark on plaintiff's own product, subsequently—and according to plaintiff not always beneficially—inclosed by defendants in a case of a different manufacturer.

Understandably, plaintiff relies on the Ingersoll decision, supra, as authority for the holding that defendants' acts constitute a "new construction" which would bar the valid use of the original maker's trade-mark on the reconstructed article. In that case the dial of the movement was removed and a different one affixed, and it was held a new construction, on which the use of the Ingersoll name would be improper. Defendants maintain that the Ingersoll case is distinguishable on the facts and also has been impliedly overruled by the Supreme Court in the Prestonettes case, supra. However, the later Supreme Court case of Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947), referred to the Ingersoll decision stating "Cases may be imagined where the reconditioning or repair would be *so extensive or so basic that it would be a misnomer to call the article by its original name,* even though the words 'used' or 'repaired' were added." It would seem to the Court that the substitution of a new crown, stem, and case would be a far greater change (and certainly no less a change) than the replacement of a dial, and would warrant a finding of a "new construction."

In the Prestonettes, Inc. v. Coty decision, supra, the Court said 264 U.S. at p. 368, 44 S.Ct. at p. 351:

"The defendant of course by virtue of its ownership had a right to compound or change what it bought, to divide either the original or the modified product, and to sell it so divided. The plaintiff could not prevent or complain of its stating the nature of the component parts and the source from which they were derived if it did not use the trade mark in doing so. * * * *When the mark is used in a way that does not deceive the public* we see no such *sanctity* in the word as to prevent it being used to tell the truth. It is not taboo. * * * If the name of Coty were allowed to be printed in different letters from the rest of the inscription dictated by the District Court a casual purchaser might look no further and might be deceived. But *when it in no way stands out from the statement of facts that unquestionably the defendant has a right to communicate in some form,* we see no reason why it should not be used *collaterally,* not to indicate the goods, but to say that the trademarked product is a constituent in the article now offered as new or changed." (Italics supplied.)

The Court further pointed out that the Prestonettes case, supra, was not one of unfair competition.

The aptness of the holding in the 1917 decision of Ingersoll v. Doyle, et al., 247 F. 620 (D.C.Mass.1917), is inescapable. In that case it was said:

"In effect, they are sales of watches under representations that the watches sold are made and guaranteed by the plaintiffs. But such representations are untrue. An Ingersoll watch * * * after the defendants' additions thereto or alterations therein have been made, is no longer what its makers offer to the public as a guaranteed Ingersoll watch; it has become a new construction. * * * *" (Citing cases.)

The Court approved a decree as submitted by Ingersoll which enjoined defendants

" 'from selling or offering for sale or delivering to others for sale any watch as an Ingersoll watch, which, though originating in the complainants' factory, has been altered or added to so that it no longer is in its entirety the product of' the plaintiffs,"

and refused to change it with the following modification defendants sought to add:

" 'Unless the defendants impress upon the dial of any such watch words

plainly legible and plainly indicating that said watch has been altered and the particulars in which it has been altered by the defendants.' "

The Court said:

" * * * [I]f, as I think, the defendants violate the plaintiffs' exclusive rights when they market their altered watches as Ingersoll watches without indicating the fact of alteration thereon, they would still be violating the plaintiffs' exclusive rights if they marketed such watches as Ingersoll watches with the proposed indication thereon. They would still be marketing, as Ingersoll watches, watches not such in their entirety, but new constructions. * * * "

A reader of this catalog page finds but a minimal reference to defendants. Probably none would remember after reading that page any name but that of Bulova, Elgin or Hamilton, with which the reader was already familiar. The fine print in which the somewhat lesser-known Allerton Company's name appears would not make a lasting impression. Furthermore, the only name appearing on the face of the watch is Bulova. The words "Treasure Mates" are inscribed on the back of the watch case, but not the name Allerton Company. On the inside of the display case the name Bulova appears as does the phrase Treasure Mates, but not the name Allerton. As the New York District Court said in Scarves By Vera, Inc. v. American Handbags, Inc., 188 F.Supp. 255 (D.C.N.Y. 1960), at p. 258:

"I find the notice printed on the tag misleading. I find that the average purchaser would be misled into believing that plaintiff and defendant were in some manner associated in the joint enterprise of manufacturing the handbags in question."

As the Court construes " 'principles of old-fashioned honesty' " [42] they would not permit the use of the name Bulova under the circumstances here outlined.

The Court has no doubt that there has been an infringement by defendants of plaintiff's trade-marks pertaining to Bulova, and unfair competition by retention of the word "Bulova" on the watch dial, and on the catalog page without adding to the word Bulova a clear explanation and identification of defendants' modification [43] of the watch which Bulova had sold, without Bulova's permission or guarantee.

Infringement is defined in 87 C. J. S. "Trade-Marks, Trade Names, and Unfair Competition" § 73, thus:

"It is an infringement for one other than the manufacturer of an article to repair or rebuild it, or to alter it, and then, with intent to deceive, to sell it under the original trade-mark or colorable imitation, although the trade-mark may be retained if the facts are clearly stated so as correctly and truthfully to convey to the public the true character of the product."

Callmann, Unfair Competition and Trade-Marks, 2d Ed., Vol. 3, p. 1659, states:

"The defendant infringes upon the plaintiff's trade-mark * * * when he sells, without authorization, the plaintiff's product with its trade-mark after repacking. * * * "

Callmann also describes thus (at Vol. 3, p. 1636) the character of notice to be given by one utilizing a trade-marked component of an article he sells:

" * * * [H]e may * * * state the nature of the component parts, and their source * * * so as to show its relation to the new article or combination offered by him. He must, of course, use that name dis-

---

42. Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 7 Cir., 205 F.2d 921; G. Leblanc Corporation v. H. & A. Selmer, Inc., 310 F. 2d 449 (C.A.7, 1962).

43. By use of a watch case not manufactured by Bulova.

creetly and collaterally, in a manner not likely to lead the public into the belief that the new product and the ingredient are from a common source."

■ Plaintiff's reply to defendants' contention of laches, that delay in bringing suit does not ordinarily affect the trade-mark owner's right to an injunction against further use of an infringing trade-mark is amply supported by the Seventh Circuit Court of Appeals' decision in Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 205 F.2d 921.

Upon considering all the equities of this cause the Court believes that a just disposition is to enjoin defendants' continued future use of the trade-mark name Bulova standing alone on the face of the watch, or the future use of the catalog page in its present format. In lieu thereof defendants must either remove the name Bulova from the face of the watch or add the word "movement" thereon. Defendants are further directed to so change the format of their catalog pages as to give greater prominence in both size, type and coloring to the name Allerton, which name shall *precede* the name Bulova on the page. The name Allerton shall appear on the display cases in which the watches are sold and shall also precede the name Bulova, if it appears thereon. It is not sufficient that the unexplained phrase Treasure Mates appears thereon. The fact that the product is guaranteed only by Allerton shall also appear on the catalog page.

■ The Court is further of the opinion that it would be inequitable to award damages for past infringement absent notice to defendants to desist from infringement after knowledge by the plaintiff. Plaintiff's delay in bringing the suit, and the lack of substantial evidence of impairment, by the infringement, of the value and integrity of plaintiff's trade-mark, and absence of intentional fraud, or intent to deceive the public also support this conclusion.

Plaintiff is directed to prepare and submit findings of fact and conclusions of law and final decree and injunction consistent with this opinion, within ten days, serving a copy thereof on the defendants who may file objections thereto within ten days thereafter.